UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVIS CURTIS W.,

               Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

Case No. C19-1938-MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the denial of his application for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by excluding the condition of fibromyalgia as a severe medically determinable impairment, declining to admit records submitted post hearing, rejecting medical opinion evidence, and in making her Step 5 determination. (Dkt. # 12.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.    BACKGROUND

Plaintiff was born in 1998, has an eleventh-grade education, and has never worked. AR at 60, 61, 252. On August 9, 2016, Plaintiff applied for benefits, alleging disability as of May 27, 1998. *Id.* at 202-11, 252. Plaintiff's applications were denied initially and on reconsideration, and

Plaintiff requested a hearing. *Id.* at 134-36. After the ALJ conducted a hearing on July 6, 2018, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 20-36.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since July 5, 2016, the application date.

Step two: Plaintiff has the following severe impairments: bipolar disorder, anxiety disorder, substance use disorder, myopic degeneration, both eyes, with previous retinopathy of prematurity (20 CFR 416.920(c)).

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity ("RFC"): Plaintiff can perform a full range of work at all exertional levels but with the following nonexertional limitations: he should not work on tasks that require use of his field of vision to complete the tasks. Work tasks should not require more than occasional far acuity. Plaintiff can understand, remember, and carry out simple tasks and instructions. He should not work with the general public. He can have occasional brief contact with coworkers and supervisors but he should work independently, not on team or tandem tasks. He needs a routine and predictable work environment with few changes.

Step four: Plaintiff has no past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 20-36.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

1

### III.    LEGAL STANDARDS

2       Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

3   security benefits when the ALJ's findings are based on legal error or not supported by substantial

4   evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a

5   general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the

6   ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

7   (cited sources omitted). The Court looks to "the record as a whole to determine whether the error

8   alters the outcome of the case." *Id*.

9       "Substantial evidence" is more than a scintilla, less than a preponderance, and is such

10  relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

11  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th

12  Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical

13  testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d

14  1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may

15  neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v.*

16  *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one

17  rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

### IV.    DISCUSSION

18

19  **A.    The ALJ Did Not Err in Excluding the Condition of Fibromyalgia as a
        Medically Determinable Impairment**

20

21      Plaintiff argues the ALJ erred in not including fibromyalgia as a medically determinable

22  impairment at Step Two of the sequential evaluation process. (Dkt. # 12 at 5-6.) SSR 12-2p

23  "designates two separate sets of diagnostic criteria that can establish fibromyalgia as a medically

    determinable impairment." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1005 (9th Cir.

2015) (citing SSR 12-2p). Pursuant to the first set of criteria – which are based on the 1990 American College of Rheumatology ("ACR") criteria – fibromyalgia may be a medically determinable impairment if the claimant has (1) a history of widespread pain; (2) at least 11 tender points; and (3) evidence that other disorders that could cause the symptoms or signs were excluded. *See* SSR 12-2p, 2012 WL 3104869, at *2-3. Under the second set of criteria – which are based on 2010 ACR criteria – fibromyalgia may be a medically determinable impairment if the claimant has (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions;[3] and (3) evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. *Id.* at 3.

Here, the ALJ acknowledged the diagnosis of fibromyalgia contained in the record (AR at 26 (citing *id.* at 427, 433, 458)), but found there were no findings consistent with the requirements of SSR-12-2p. *Id.* at 25-26. Specifically, the ALJ found the providers who diagnosed Plaintiff did not state how many trigger points there were, the severity thereof, or any specific locations. *Id.* at 26. The ALJ further found there were no longitudinal records reflecting ongoing treatment for fibromyalgia and noted Plaintiff did not follow through with physical therapy for his chronic pain complaints. *Id.* The ALJ also noted that all other references in the record to fibromyalgia were based on Plaintiff's self-reports. *Id.* The ALJ further found that while the record contains mention of pain by Plaintiff, there was no objective evidence of a history of widespread pain, no repeated manifestations of six or more fibromyalgia symptoms,

---

[3] SSR 12-2p lists several possible fibromyalgia symptoms, signs, and co-occurring conditions, including anxiety disorder, fatigue, waking unrefreshed, headaches, depression, muscle weakness, and pain or cramps in the abdomen. *See* SSR 12-2p, 2012 WL 3104869, at *3; *see also id.* at n. 9-11.

1    signs, or co-occurring conditions, and that the providers who diagnosed Plaintiff did not exclude

2    other disorders that could cause these symptoms. *Id.*

3          Plaintiff argues SSR 12-2p is outdated and does not exhaust the criteria for establishing a

4    fibromyalgia diagnosis. (Dkt. ## 12 at 5, 14 at 1-2.) In support of this general assertion, Plaintiff

5    argues the Disability Determination Services doctors that assessed Plaintiff were presumably

6    aware of the SSR 12-2p criteria and listed fibromyalgia as a severe condition. (Dkt. # 12 at 5.)

7    Plaintiff also notes there are references in the record regarding tenderness and diffuse body pain

8    that are consistent with fibromyalgia. (Dkt. # 14 at 2-3.) Plaintiff further argues that the ALJ is

9    not a doctor and therefore cannot reject a fibromyalgia diagnosis based on the same evidence

10   reviewed by doctors who found fibromyalgia to be a severe condition. (Dkt. # 12 at 5-6.)

11         Here, Plaintiff has not established that the ALJ erred in relying on the SSR 12-2p criteria

12   in assessing Plaintiff's fibromyalgia and fails to identify any specific error with that assessment.

13   Plaintiff argues the 1990 ACR criteria is outdated and notes the criteria from the more current

14   2010 ACR criteria does not require a tender-point count. However, this argument ignores the

15   ALJ's findings under the 2010 ACR criteria, specifically, the lack of history of widespread pain,

16   a lack of repeated manifestations of fibromyalgia symptoms, signs, or co-occurring conditions,

17   and that other disorders that could cause these symptoms were not excluded. Although Plaintiff

18   proposes a different interpretation of the evidence, and notes doctors have listed fibromyalgia as

19   a severe condition, Plaintiff has not shown that the ALJ's interpretation of the medical evidence

20   was irrational. Accordingly, the ALJ could reasonably find fibromyalgia was not a medically

21   determinable impairment. *Thomas*, 278 F.3d at 954.

22

23

**B.      The ALJ Did Not Err in Declining to Admit Medical Evidence Submitted Post Hearing**

Plaintiff argues the ALJ erred in rejecting material submitted post hearing regarding Plaintiff's mental health treatment. (Dkt. # 12 at 6.) In the Social Security context, the plaintiff has a duty to submit, or inform the ALJ about, any written evidence no later than five business days before the hearing (the "five-day rule"). 20 C.F.R. § 416.1435(a). If a claimant does not comply with this requirement, the ALJ "may decline to consider or obtain the evidence," unless certain exceptions apply. *Id.* The exceptions are: (1) the Social Security Administration misled the claimant; (2) the claimant had a physical, mental, educational, or linguistic limitation(s) that prevented informing the ALJ about the evidence or submitting it earlier; or (3) some other unusual, unexpected, or unavoidable circumstance beyond the claimant's control prevented the claimant from informing the ALJ about the evidence or submitting it earlier. 20 C.F.R. § 416.1435(b).

At the July 6, 2018 hearing, Plaintiff disclosed for the first time that he attended mental health treatment at Valley Cities Behavioral Health Care ("Valley Cities") for approximately one year. AR at 20; (Dkt. # 12 at 6). On July 25, 2018, Plaintiff submitted records from Valley Cities to the ALJ. AR at 20. The ALJ found the records were not identified pursuant to 20 CFR § 416.1435(a) and that Plaintiff did not provide good cause for submitting them after the hearing. *Id.* The ALJ therefore declined to admit the records.[4] *Id.*

Plaintiff argues that an exception to the five-day rule applies to the Valley Cities records because treatment records show he suffers from significant mental illness. (Dkt. # 14 at 4.)

---

[4] The ALJ left the record open for Plaintiff to submit other additional medical records from St. Elizabeth Hospital, as well as records from Mary Bridge Children's Hospital and Harborview Medical Center Eye Institute. *Id.* at 20-21; (Dkt. # 14 at 3). The ALJ found exceptions to the five-day rule were satisfied with regard to those records and admitted them. AR at 20-21; (Dkt. # 14 at 3).

Plaintiff asserts that the combination of his mental conditions may have made communicating information difficult and that those with a mental illness often lack insight into dealing with issues arising in a legal setting. (*Id.*) Plaintiff also argues the ALJ should have admitted the records because the ALJ had a duty to develop the record. (Dkt. ## 12 at 6-7, 14 at 5.) Plaintiff asserts that the ALJ was aware of Plaintiff's mental health issues because of the submitted treatment records, but still refused to admit them and later cited to Plaintiff's lack of treatment to discount Plaintiff's mental health allegations. (Dkt. # 14 at 5.)

The Court finds Plaintiff has not shown that an exception to the five-day rule applies. He does not assert he was misled or that an unusual, unexpected, or unavoidable circumstance outside his control prevented him from timely submitting the records. Other than generally asserting that he suffers from mental limitations, Plaintiff has not identified specifically how those limitations prevented him from submitting the Valley Cities records before the hearing pursuant to the five-day rule. Plaintiff was represented by counsel and was able to timely identify and submit other medical records. Because Plaintiff did not comply with the five-day rule, the ALJ could decline to consider evidence. 20 C.F.R. § 416.1435(a).

Further, an ALJ's duty to develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001). Here, Plaintiff has not shown that the record was either ambiguous or inadequate. In fact, the record contains numerous medical records that reflect Plaintiff's mental health status as well as mental health evaluations that the ALJ considered. *See* AR at 29-33. The only specific error Plaintiff identifies is that the ALJ discounted medical opinions based on a lack of mental health treatment. However, Plaintiff mischaracterizes the ALJ's findings. The ALJ found there was a lack of properly submitted

evidence of treatment with a psychiatrist or psychotherapy. *Id.* at 33. Even if the ALJ erred in discounting medical opinions for this reason, the ALJ provided other sufficient reasons for discounting the opinions, discussed below. Therefore, any potential error in discounting medical opinion evidence on the basis that there were no properly submitted records regarding mental health treatment is harmless. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2008). Plaintiff failed to comply with Social Security Administration regulations when submitting the Valley Cities records and the ALJ did not err by declining to admit those records into evidence.

## C.     The ALJ Did Not Err in Rejecting Medical Evidence

### 1.     *Legal Standards*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the

doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

        2.    *Dr. Thanh V. Pham, M.D.*

Dr. Pham performed a physical functional evaluation of Plaintiff in August 2017. AR 527-29. Dr. Pham considered Plaintiff's bipolar depression and fibromyalgia. *Id.* Dr. Pham opined Plaintiff had moderate limitations and could only do sedentary work. *Id.* at 528. Dr. Pham also opined that Plaintiff's limitations would last for six months. *Id.* at 529.

1    The ALJ gave no weight to Dr. Pham's opinion. AR at 31. The ALJ found that Dr.

2    Pham's opinion that Plaintiff's impairments would last for six months did not meet the durational

3    requirements for disability. *Id.* at 32. The ALJ also found Dr. Pham provided no explanation for

4    the opinion, such as examination findings, objective evidence from laboratory, imaging, range or

5    motion, or other diagnostic states. *Id.* The ALJ noted that Dr. Pham considered the effects of

6    bipolar depression even though he conducted a physical functioning assessment. *Id.* The ALJ

7    further found Dr. Pham found Plaintiff had fibromyalgia but that the diagnosis was not

8    established by acceptable techniques, as discussed above regarding the ALJ's Step Two

9    determination. *Id.*

10    The Court finds the ALJ provided specific and legitimate reasons for discounting Dr.

11    Pham's opinion. Specifically, Dr. Pham opined Plaintiff's symptoms would last only six months.

12    Although Plaintiff argues there is no evidence in the record to show his health improved at the

13    time of the ALJ's decision (dkt. # 12 at 8 n.4), in the Social Security context, a "disability" is an

14    impairment "which has lasted or can be expected to last for a continuous period of not less than

15    12 months." *See* 42 U.S.C. § 1382c(a)(3)(A); *see also Barnhart v. Walton*, 535 U.S. 212, 217-22

16    (2002) (upholding the SSA's regulatory interpretation of the Social Security Act's "disability"

17    definition, which requires an "impairment" and inability to engage in substantial gainful activity

18    for "not less than 12 months").

19    Plaintiff also generally asserts that as part of a treatment team, Dr. Pham had access to

20    Plaintiff's medical records and did not need to recreate them in his opinion. (Dkt. # 14 at 6.)

21    However, an ALJ may discredit the opinions of a physician that are unsupported by objective

22    medical findings. *Batson v. Comm'r of Soc. Sec. Admin,* 359 F.3d 1190, 1195 (9th Cir. 2004).

23    Although Plaintiff speculates that Dr. Pham had access to his medical records and presumably

based his opinion on them, there is no reference to those records in his opinion. The ALJ therefore did not err in discounting the opinion based on the lack of supporting objective medical findings.

Further, Dr. Pham's opinion is based on limitations regarding Plaintiff's fibromyalgia diagnosis. As previously discussed, the ALJ did not err in finding fibromyalgia was not a medically determinable impairment and therefore the ALJ could reasonably discount Dr. Pham's opined limitations stemming from that diagnosis. 20 C.F.R. § 416.905(a) (only medically determinable impairments can contribute to a finding of disability under the Act); 20 C.F.R. § 416.945(a)(2) (the ALJ considers only medically determinable impairments when assessing the RFC).

Lastly, Plaintiff asserts the ALJ erred in discounting Dr. Pham's opinion because he performed a physical assessment but considered the effects of Plaintiff's bipolar disorder. Even if this is not a specific and legitimate reason to discount Dr. Pham's opinion, any error is harmless given the other specific and legitimate reasons, supported by substantial evidence, for discounting his opinion. *Carmickle*, 533 F.3d 1155.

### 3.     Dr. James Irwin, M.D.

State agency consultant James Irwin reviewed the record and provided a RFC determination in March 2017. AR at 110-13. Dr. Irwin opined Plaintiff was limited to light work, specifically only occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying 10 pounds, standing and/or walking for six hours in an eight-hour workday, and sitting about six hours in an eight-hour workday. *Id.* at 112. Dr. Irwin also opined Plaintiff could frequently climb ramps and stairs, stoop, kneel, crouch, and crawl, and could occasionally climb ladders, ropes, and scaffolds. *Id.* Dr. Irwin further opined Plaintiff has a reduced ability to perform fine detailed vision tasks. *Id.*

The ALJ gave no weight to Dr. Irwin's opinion that Plaintiff would be limited to light work with additional non-exertional limitations. AR at 31. The ALJ found that like with Dr. Pham's opinion, there was no evidence of impairments to cause limitations regarding Plaintiff's ability to perform exertional, postural, or environmental tasks. *Id.* The ALJ also found Dr. Irwin's opinion was inconsistent with the medical evidence as a whole. *Id.* However, the ALJ assigned Dr. Irwin's opinion that Plaintiff had limited bilateral field of vision significant weight because the evidence in the record supported the need for some visual limitations and precautions. *Id.* at 32 (citing *id.* at 346-54, 355-58, 359-83, 484-500, 507-11, 580-89).

The Court finds the ALJ properly discounted the portions of Dr. Irwin's opinion that found Plaintiff would be limited to light work based on the lack of supportive evidence. *Batson,* 359 F.3d at 1195. As discussed above with regard to Dr. Pham, a lack of objective evidence to support a medical opinion was a specific and legitimate reason, supported by substantial evidence, to discount the medical opinion.

    *4. Dr. Katrina L. Higgins, Psy.D.*

Dr. Higgins conducted a psychological evaluation of Plaintiff in November 2016. AR at 501-05. Dr. Higgins opined Plaintiff would be capable of performing simple, repetitive tasks but would have difficulty completing complex tasks. *Id.* at 504. Dr. Higgins also opined Plaintiff would have difficulty accepting instruction from supervisors and getting along with coworkers and the public. *Id.* at 505. Dr. Higgins further opined Plaintiff would have difficulty attending work regularly without interruption from his psychological symptoms. *Id.*

The ALJ assigned Dr. Higgins' opinion little weight. AR at 32. The ALJ found her report relied on claimant's own statements regarding his anxiety. *Id.* The ALJ also found that although Plaintiff was somewhat circumstantial and had some issues with fund of knowledge during the

1    examination, the rest of the examination was within normal limits. *Id.* The ALJ further found

2    Plaintiff was not forthright about his drug use and history. *Id.* The ALJ concluded Dr. Higgins'

3    opined limitations were out of proportion to the evidence as there was no evidence in the record

4    that he is unable to follow instructions. *Id.* The ALJ also found that although he may have

5    difficulty getting along with coworkers and the public, he is not precluded from doing so and

6    further that these limitations were accounted for in the RFC. *Id.* The ALJ also found Dr. Higgins

7    gave no explanation for why Plaintiff would have problems attending work and that treatment

8    provider notes showed he had normal mood and affect. *Id.* (citing, *e.g.*, *id.* at 356, 387, 393, 397-

9    98, 404, 411, 417, 421, 427, 433, 438, 442, 448, 456, 489-90, 537, 642, 652, 656, 666, 672, 708,

10   717, 722, 728, 734, 736, 739, 744, 747, 750, 754, 756, 760, 905, 980, 985, 1078, 1105, 1226-27,

11   1258). Lastly, the ALJ noted there is no properly submitted evidence of treatment with a

12   psychiatrist or psychotherapy.[5] *Id.* at 33.

13       The ALJ provided specific and legitimate reasons for discounting Dr. Higgins' opinion.

14   The ALJ found Dr. Higgins relied on Plaintiff's self-reports, and Plaintiff did not challenge the

15   ALJ's discounting of his testimony. Further, an ALJ may consider evidence of a claimant's lack

16   of candor regarding drug and alcohol usage. *Thomas*, 278 F.3d at 959. Here, the ALJ specifically

17   found Plaintiff was not forthright with his substance abuse history. In addition, an opinion's

18   inconsistency with the medical record may serve as a specific and legitimate reason for

19   discounting it. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *Ghanim v. Colvin*, 763 F.3d

20   1154, 1161 (9th Cir. 2014) (An ALJ may give less weight to medical opinions that conflict with

21   treatment notes). The ALJ cited numerous records showing Plaintiff had normal mood and affect

22   and denied depression. Although Plaintiff reported depression, anxiety, and insomnia at times

23

---

[5] As discussed above, any error in discounting the medical opinion evidence based on a lack of properly submitted records regarding mental health treatment is harmless. *Carmickle,* 533 F.3d 1155

1   (AR at 489-90), the ALJ could reasonably find Plaintiff primarily exhibited a normal mental

2   mood, which is inconsistent with the severity of Dr. Higgins' opinion. Accordingly, the ALJ

3   provided specific and legitimate reasons, supported by substantial evidence, for discounting Dr.

4   Higgins' opinion.

5           *5.      Dr. David Widlan, Ph.D.*

6           Dr. Widlan performed a psychological evaluation of Plaintiff in August 2017. AR at 514-

7   24. Dr. Widlan opined Plaintiff has moderate limitations in understanding, remembering,

8   persisting in tasks by following simple or detailed instructions, performing routine tasks without

9   special supervision, learning new tasks, asking simple questions, being aware of hazards, and

10  maintaining appropriate behavior in a work setting. *Id.* at 517. Dr. Widlan also opined Plaintiff

11  would have marked limitations in performing activities within a schedule, adapting to changes in

12  a routine work setting, making simple work-related decisions, communicating and performing

13  effectively in a work setting, completing a normal workday and week without interruptions from

14  his psychological symptoms, and setting realistic goals and planning independently. *Id.*

15          The ALJ assigned Dr. Widlan's opinion little weight. AR at 32. The ALJ found the

16  mental status examination from his evaluation was normal (*id.* (citing *id.* at 518-19)), and that

17  nothing other than Plaintiff's report of depression explained or supported Dr. Widlan's findings

18  and opined limitations. *Id.* at 33. The ALJ also found Dr. Widlan's opined limitations were out of

19  proportion to the other medical evidence in the record. *Id.* The ALJ noted that while Plaintiff did

20  seek some treatment, he did not report significant depression or mania. *Id.* (citing *id.* at 384-481).

21  The ALJ found that although Plaintiff reported anxiety, he did not allege he could not do things

22  at all. *Id.* The ALJ also found Plaintiff did not give Dr. Widlan an accurate history, including his

23

1    past and current drug use. *Id.* The ALJ concluded Plaintiff's subjective reports and presentation

2    could not be entirely relied on due to these inconsistencies. *Id.*

3            As previously discussed, Plaintiff's lack of candor regarding his drug and alcohol usage

4    is a specific and legitimate reason to discount Dr. Widlan's opinion. Similarly, the

5    inconsistencies between the severity of Dr. Widlan's opined limitations and the record showing

6    primarily normal mood and affect, and the lack of objective evidence to support the opined

7    limitations, are specific and legitimate reasons for discounting Dr. Widlan's opinion.

8    Accordingly, the ALJ provided specific and legitimate reasons, supported by substantial

9    evidence, for discounting medical opinion evidence and the ALJ therefore did not err in

10   evaluating the medical opinion evidence.

11           Plaintiff appears to take issue with the ALJ's assignment of significant weight to Dr.

12   Forsyth's mental residual functional capacity in his reply brief. (Dkt. # 14 at 8.) Plaintiff asserts

13   that it is "hard to know" what the opinion is based on because the ALJ discounted the other

14   medical opinion evidence. (*Id.* at 7.) This vague argument is unpersuasive, especially in light of

15   the numerous treatment records and mental status examinations cited by the ALJ that are

16   consistent with Dr. Forsyth's opinion, and that the ALJ found his opinion consistent with the

17   Plaintiff's activities of daily living including taking the bus, doing dishes, laundry, cooking, and

18   grocery shopping, walking daily, visiting friends, performing personal care, and doing creative

19   things (*e.g.* music stuff, drawing, art stuff, collages). AR at 32. "[T]he report of a nonexamining,

20   nontreating physician need not be discounted when it 'is not contradicted by *all other evidence* in

21   the record.'" *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (quoting *Magallanes*, 881

22   F.2d at 752 (emphasis in original)).

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**D.      The ALJ Did Not Err in the Step 5 Determination**

At the hearing, a vocational expert ("VE"), testified about the available job numbers for an individual with Plaintiff's age, education, work experience, and RFC. AR at 34. The VE testified that the following occupations could be performed in the national economy: industrial cleaner (300,000), laborer (300,000+), warehouse checker (35,000), bench hand (25,000), dowel inspector (10,000), and bench assembler (200,000). *Id.* Plaintiff alleges the ALJ made multiple errors regarding the VE's testimony. The Court will address each in turn.

*1.      Subpoena Duces Tecum*

Plaintiff submitted a request to issue a subpoena prior to the hearing that would require the VE to bring the documentation that he would rely on regarding the availability of jobs. AR 274-76. The ALJ denied the request and overruled any standing objections to the stipulation of the VE's expertise. AR at 22. The ALJ found that nothing in the Social Security law regulations require production of this information and that most of the documents relied upon by VEs are publicly available. *Id.* The ALJ also cited *Liskowiz v. Astrue*, 559 F.3d 736 (7th Cir. 2009) and *Guiton v. Colvin*, 2013 U.S. App. Lexis 22620 (4th Cir. 2013) in support of her assertion that requiring VEs to produce evidence of job statistics to the DOT-coded occupations would impose too heavy a burden on VEs, and 20 C.F.R. § 404.1566(d) and *Johnson v. Shalala*, 60 F.3d 1428 (9th Cir. 1995) for the proposition that she may take administrative notice of any reliable information, including information provided by a VE. *Id.* The ALJ found the hearing VE was a qualified expert and that Plaintiff's representative had a full opportunity to cross-examine him at the hearing. *Id.*

Plaintiff argues the ALJ erred in not issuing a subpoena because an ALJ may only take administrative notice of reliable job information provided by a VE, and simply qualifying as an

expert is insufficient to make a VE's testimony reliable. (Dkt. # 14 at 8 (citing *Bayliss*, 427 F.3d 1211).) Plaintiff cites information provided by a VE that he hired after the hearing that contradicts the hearing VE's testimony. Plaintiff appears to assert that this differing information regarding job numbers makes the hearing VE's testimony unreliable.

The Commissioner argues the Supreme Court rejected Plaintiff's line of argument in *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019).[6] (Dkt. # 13 at 13-14.) In *Biestek*, the Court found that a VE's refusal to provide underlying data does not categorically preclude the VE's testimony from constituting substantial evidence. 139 S.Ct. at 1157. The Commissioner therefore asserts the ALJ did not err by rejecting Plaintiff's request for a subpoena.

Throughout the five-step evaluation, the ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews*, 53 F.3d at 1039. The ALJ bears the burden at step five to provide evidence demonstrating that "other work exists in significant numbers in the national economy that [a claimant] can do, given [his RFC] and vocational factors." C.F.R. § 404.1560(c)(2). In so doing, "[a]n ALJ may take administrative notice of any reliable job information, including information provided by a VE." *Bayliss,* 427 F.3d 1218 (citing *Johnson,* 60 F.3d at 1435 ( "A VE's recognized expertise provides the necessary foundation for his or her testimony.")).

Here, the Court agrees with the Commissioner. In federal court, "an expert witness must produce all data she has considered in reaching her conclusions," but "no similar requirement applies in SSA hearings." *Biestek*, 139 S. Ct. at 1154 (citing Fed. R. Civ. P. 26(a)(2)(B)). Further, a VE's recognized expertise provides the necessary foundation for his or her testimony"

---

[6] Plaintiff argues the ALJ did not cite *Biestek* as a reason to deny the request for a subpoena and therefore it is a *post hoc* argument. (Dkt # 14 at 7.) However, this is not a *post hoc* explanation, rather it is a correct statement of the law.

and "no additional foundation is required." *Bayliss*, 427 F.3d at 1281; *Ford v. Saul*, 950 F.3d 1141, 1159 (9th Cir. 2020) (where the expert is qualified and presents cogent testimony that does not conflict with other evidence in the record, "the expert's testimony still will clear (even handily so) the more-than-a-mere-scintilla threshold" even when the expert declines to provide the underlying data) (citing *Biestek,* 139 S. Ct. at 1157).

Because there is no requirement for an ALJ to grant a claimant's request for a subpoena, and Plaintiff has not shown that it was reasonably necessary or that the ALJ abused her discretion in denying Plaintiff's request, the Court finds the ALJ did not err. 20 C.F.R. § 416.1450(c). The ALJ found the hearing VE's testimony was consistent with the information contained in the DOT and that any deviation was based on the VE's knowledge, education, training, and professional experience in analyzing the jobs. AR at 34. Plaintiff's argument regarding the smaller job numbers provided by the VE hired after the hearing merely raises a question of fact. The hearing VE's testimony constitutes substantial evidence and review of an ALJ's fact-finding for substantial evidence is deferential and the inquiry defers to the ALJ. *Ford,* 950 F.3d. at 1159 (citing *Biestek*, 139 S. Ct. at 1157).

Further, Plaintiff's post hearing VE only provided information regarding some of the jobs discussed by the hearing VE, as discussed in more detail below. The other jobs not discussed by Plaintiff's VE exist in significant numbers in the national economy that Plaintiff can perform. Therefore, even if the ALJ did err in not issuing a subpoena, any error is harmless. *Carmickle*, 533 F.3d 1155.

### 2. *Cross Examination*

Plaintiff also argues the ALJ erred in not allowing his representative to fully cross-examine the VE. (Dkt. # 12 at 15-16.) During the hearing, Plaintiff's representative inquired about the source of the VE's job numbers. AR at 84. The VE testified that his sources were the

1    "Washington Occupational Information System data, employment security data, Bureau of Labor

2    Statistics, Occupational Employment Statistics and from labor market surveys and job analyses

3    developed by me and by other professionals … in my industry." *Id.* In response, Plaintiff's

4    representative asked if the Bureau of Labor Statistics published job number data for specific

5    occupations to which the VE stated it did not. *Id.* Plaintiff's representative then asked the VE

6    again what the sources of his job numbers were. *Id.* The ALJ found this question was already

7    asked and answered and told Plaintiff's representative to move on. *Id.* at 84-85. The ALJ advised

8    that she recognized the VE as an expert and that the VE had already testified about his sources.

9    *Id.* As noted above, the ALJ stated she was relying on the VE's opinion based on the knowledge,

10   experience, and training on his interpretation of the data. *Id.* at 85. Plaintiff's representative then

11   stated he would not ask any more questions. *Id.* at 86.

12         Plaintiff argues the ALJ improperly stopped his representative from questioning the VE

13   about the details regarding the source of his job numbers. (Dkt. # 12 at 16.) Plaintiff cites to 20

14   C.F.R. 404.1566(b) that requires significant numbers by individual occupations. AR at 85.

15   Plaintiff notes that the ALJ acknowledged one of his sources, the Bureau of Labor Statistics, did

16   not provide data regarding job numbers. (*Id.* (citing AR at 84).) However, Plaintiff ignores the

17   other sources listed by the VE. Further, the VE had already answered the question regarding the

18   sources of his job numbers. Although Plaintiff asserts the ALJ prevented his representative from

19   asking about more details, the representative merely repeated his question regarding generally

20   what the VE's sources were. When told to move on, Plaintiff's representative declined to ask any

21   further questions. Accordingly, the Court finds the ALJ did not err in finding the question raised

22   by Plaintiff's representative was already asked and answered.

23

1          3.       *Post-Hearing Submission*

2          As noted above, Plaintiff hired a VE after the hearing, Mr. Moisan, to provide

3   information about the jobs identified at the hearing. (Dkt. # 12 at 16); AR at 325-45. Mr. Moisan

4   provided a declaration stating that he reviewed the transcript from hearing and the jobs listed at

5   the light and sedentary exertional levels. *Id.* Mr. Moisan found the job numbers identified by the

6   hearing VE were inaccurate and stated the only programs that provide job number data are U.S.

7   Publishing and Skill Tran's Job Browser Pro. *Id.* Mr. Moisan conducted his own research using

8   Job Browser Pro and provided his own job numbers for the positions of warehouse checker,

9   preparer, dowel inspector, and bench assembler that were below the numbers provided by the

10  hearing VE. *Id.* at 329 Mr. Moisan concluded that none of the jobs existed in significant numbers

11  in the country. *Id.*

12         The ALJ gave no weight to Mr. Moisan's submission. AR at 35. The ALJ found the

13  hearing VE testified that he used his own statistical analysis to come up with the job numbers

14  from sources of information administratively noticed under the SSA regulations and that

15  Plaintiff's representative had the opportunity to question him about it. *Id.* The ALJ also found

16  that although Mr. Moisan's declaration says the only way to arrive at a job number is by using

17  the two programs he relies on, he stated he does not know how the programs come up with the

18  numbers and that he cited no evidence that those programs are the only method for providing

19  information about job numbers. *Id.*

20         As discussed above, Mr. Moisan's job numbers may raise an issue of fact, but they do not

21  make the hearing VE's testimony unreliable. Further, Mr. Moisan did not address all the jobs

22  raised by the hearing VE. AR at 34-35. Specifically, Mr. Moisan did not address the jobs of

23  industrial cleaner or laborer that have a combined number of 300,000 jobs. Thus, even if Mr.

Moisan's report undercut the hearing VE's testimony regarding job numbers, there are still jobs that exist in significant numbers in the national economy that Plaintiff can perform. Accordingly, the ALJ did not err in her Step Five determination.

**V.     CONCLUSION**

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 5th day of August, 2020.


MICHELLE L. PETERSON
United States Magistrate Judge